fUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SMARTSHEET, INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>FEDERAL INSURANCE COMPANY, et al.,<br><br>               Defendant. | CASE NO. C22-314 MJP<br><br>ORDER DENYING MOTIONS TO DISMISS |

This matter comes before the Court on Defendant Federal Insurance Company's Motion to Dismiss (Dkt. No. 44) and Defendant Freedom Specialty Insurance Company's Motion to Dismiss (Dkt. No. 52). Having reviewed the Motions, the Opposition (Dkt. No. 57), the Reply in which Freedom joins (Dkt. Nos. 61, 62), the Court DENIES the Motions.

**BACKGROUND**

A local software company, Plaintiff Smartsheet, Inc., has filed suit against its insurers to obtain declaratory relief as to the scope of coverage due under its directors and officers policies. Smartsheet also asserts breach of contract, bad faith, and Washington Insurance Fair Conduct

ORDER DENYING MOTIONS TO DISMISS - 1

Act claims against variously against certain defendants. The underlying facts relevant to the Motions to Dismiss concern two groups of lawsuits filed against different directors that allege the directors duped early investors into selling their shares before the company went public in April 2018. (First Am. Compl. ¶¶ 2-6, 29.) Two of Smartsheet's insurers, Federal and Freedom, seek dismissal of some of the claims on the theory that the coverage available to Smartsheet is limited to one policy year and not two. They argue that under the claims-made policy all of the claims Smartsheet faced are "related claims" that are covered only under the earliest policy period, not both years. The Court first reviews the underlying facts of the actions against the directors and the relevant portions of the insurance policies.

A.	**Claims against Smartsheet and its Directors**

While a private company, Smartsheet had a number of investors, including Insight Ventures Partners VII, L.P., which invested significant sums in the company. (FAC ¶¶ 31-34.) Insight appointed its managing director, Ryan Hinkle, to be a director at Smartsheet. (FAC ¶ 6.) While Hinkle was a director of Smartsheet in April 2017, Insight agreed to purchase over 6.6 million shares of Smartsheet stock at a price of $8.3035 per share (the "Tender Offer"). (FAC ¶ 37.) "The Tender Offer process included a notification to Smartsheet shareholders as to their options and rights, a forum for answering shareholder questions regarding the Tender Offer, and Offering Documents that identified the risk factors and other elements of the Tender Offer." (FAC ¶ 39.) Through the Tender Offer, Insight acquired over 5.3 million shares of stock from the other private investors. (FAC ¶ 40.). In December 2017, after the Tender Offer, Smartsheet then filed a draft registration statement with the Securities and Exchange Commission to issue common stock through an Initial Public Offer. (FAC ¶ 42.) On April 27, 2018, Smartsheet's shares began to trade publicly and closed that day at a price of $19.50 per share. (FAC ¶ 42.)

1  Investors who sold in the Tender Offer were unhappy to learn that Smartsheet went
2  public and that public shares were trading at a far higher price than offered in the Tender Offer.
3  In December 2019, Patrick Colacurcio filed a class action lawsuit against Hinkle and Insight,
4  which the parties refer to as the Colacurcio Class Action. (FAC ¶ 44(a).) According to
5  Smartsheet, the plaintiffs in the Colacurcio Class Action alleged "among other things, that
6  plaintiffs were induced to sell their Smartsheet shares to Insight at artificially reduced prices in
7  part because Hinkle improperly failed to disclose knowledge relating to a potential future
8  Smartsheet IPO that he allegedly obtained in his role as a Director of Smartsheet." (FAC ¶ 47.)
9  In January 2021, Hinkle and Insight filed suit against Smartsheet demanding the advancement of
10 defense costs arising out of the Colacurcio Class Action. (FAC ¶¶ 44(b), 50.) And in April 2021,
11 Smartsheet served an arbitration demand against a former employee, David Hanson, who was a
12 named plaintiff in the Colacurcio Class Action that Smartsheet alleged violated a separation
13 agreement. (FAC ¶ 44(c), 57.) Hanson filed a counterclaim that Smartsheet violated the
14 Washington State Securities Act by failing to disclose the potential future IPO to Tender Offer
15 purchasers. (FAC ¶ 58.) The Parties refer to the action filed by Hinkle and Insight and the
16 Hanson arbitration as the "Ancillary Actions."
17  Separately, in June 2018, Megan Colacurcio served an arbitration demand on her ex-
18 husband and Smartsheet's founder/director, Brett Frei, alleging Frei duped her into disposing of
19 her Smartsheet shares before the Tender Offer. (FAC ¶¶ 60-62.) Colacurcio alleged that she
20 agreed to sell her Smartsheet shares to Frei as part of their divorce settlement for far less than the
21 Tender Offer price. (See Ex. A to the Declaration of Matthew W. Beato (Dkt. No. 45 at 5-15
22 ("Frei Demand"); FAC ¶ 61.) According to Colacurcio's arbitration demand, Frei withheld the
23 fact that Colacurcio could have sold her shares in the Tender Offer for far more than she sold
24

them through the settlement. (Frei Demand at ¶¶ 4-5.) Colacurcio also alleged that Frei violated a representation and warranty in the divorce settlement agreement that Smartsheet was not intending to go public within 18 months of the agreement. (Id. ¶ 21-23.) Colacurcio alleged various claims including a breach of fiduciary duty claim against Frei in his capacity as a director of Smartsheet. (Id. ¶¶ 44-49.) The Court refers to this as the Frei Demand.

**B.    Smartsheet's Insurance**

Smartsheet purchased Directors & Officers and Entity Securities Liability Insurance Policy No. 8251-3818 from Federal for the policy period of April 27, 2018 to April 27, 2019 (the "2018 Policy"). (FAC ¶ 71.) Smartsheet purchased a series of excess policies for this same period on the same general terms and conditions of the Policy. (FAC ¶ 84.) The 2018 Policy covers claims against Smartsheet and "any natural person who was, now is or shall become . . . a duly elected or appointed director" of Smartsheet. (FAC ¶ 74.) Through the 2018 Policy, Federal agreed to "pay, on behalf of an Organization [Smartsheet], Loss on account of a Claim first made against an Insured Person during the Policy Period, to the extent the Organization pays or indemnifies such Loss." (FAC ¶ 75.) Through the 2018 Policy, Federal agreed to "pay, on behalf of an Organization, Loss on account of a Securities Claim first made against the Organization during the Policy Period." (FAC ¶ 76.)

Under the 2018 Policy, a "claim" "includes (A) any written demand for monetary or non-monetary relief against an Insured for a Wrongful Act, and (B) any proceeding against an Insured for a Wrongful Act commenced by the service of a civil complaint or similar pleading." (FAC ¶ 77.) And the 2018 Policy defines "Securities Claim" as a claim:

> (A) against an Insured for a violation of any United States securities law, but solely in connection with the securities of an Organization;
>
> (B) against an Insured for a common law cause of action, plead in tandem with, or in lieu of, any securities law violation described in Subsection (A) above and brought by: (1) A

ORDER DENYING MOTIONS TO DISMISS - 4

      securityholder of an Organization with respect to his interest in the securities of such Organization; or (2) Any person or entity in connection with the purchase, sale or offer to purchase or sell securities of an Organization . . .

(FAC ¶ 78.) The 2018 Policy also defines "Wrongful Act" as (A) "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (1) an Insured Person in his capacity as such; or (2) for purposes of any coverage afforded under Insuring Clause (C), Entity Securities Coverage, by the Organization;" or (B) "any other matter claimed against an Insured Person solely by reason of serving in his capacity as such." (FAC ¶ 79.)

      Of particular importance to the pending motions to dismiss is the claims-made provision, which states that:

      All Related Claims [Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, situations, transactions or events or the same or related series of facts, situations, transactions or events] shall be deemed a single Claim made in the Policy Period in which the earliest of such Related Claims" was first made.

(FAC ¶ 83.)

      For the 2019-2020 coverage year, Smartsheet obtained Directors & Officers and Entity Securities Liability Insurance Policy No. 8251-3818 from Federal for the policy period of April 27, 2019 to April 27, 2020 (the "2019 Policy"). (FAC ¶ 102.) Smartsheet obtained excess coverage from a host of other insurers, including Freedom. (FAC ¶ 115.) Freedom did not provide coverage for the 2018-2019 coverage year. The claims-made language in the 2019 Policy mirrors the language in the 2018 Policy. (Compare FAC ¶ 83 with ¶ 114; see Federal MTD at 3 n.2.)

**C.**    **Motions to Dismiss**

      Federal argues that the Frei Demand, the Colacurcio Class Action, and the Ancillary Actions are related claims and must be considered as a single claim under the 2018 Policy.

ORDER DENYING MOTIONS TO DISMISS - 5

1  Freedom agrees with this position and asserts that because there are no claims under the 2019
2  Policy, it owes no coverage and the claims against it must be dismissed. Smartsheet opposes the
3  Motion on the theory that the Frei Demand is distinct from the Colacurcio Class Action and
4  Ancillary Actions and that the Frei Demand is not a "claim" under either Policy. It does not
5  oppose treating the Colacurcio Class Action and the Ancillary Actions as related under the 2018
6  Policy.

## ANALYSIS

The Motions to Dismiss present two primary issues to resolve. First, as Smartsheet argues in its opposition, the Court must first determine whether the Frei Demand is a "claim" under the Policy. Second, the Court must determine whether the Colacurcio Class Action and the Frei Demand are related claims that are subject only to coverage under the 2018 Policy. The Court addresses these two issues after setting forth the legal standards guiding its analysis.

**A.      Legal Standard**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). And "a district court ruling on a motion to dismiss may consider a document the authenticity of which is

1 | not contested, and upon which the plaintiff's complaint necessarily relies." Parrino v. FHP, Inc.,
2 | 146 F.3d 699, 705–06 (9th Cir. 1998), superseded by statute on other grounds.

3 | "Interpretation of insurance policies is a question of law, in which the policy is construed as a
4 | whole and each clause is given force and effect." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 424
5 | (2002).The Court construes insurance policies as contracts, giving them a "[f]air, reasonable, and
6 | sensible construction as would be given to the contract by the average person purchasing
7 | insurance." Xia v. ProBuilders Specialty Ins. Co., 188 Wn.2d 171, 181 (2017) (quotation and
8 | citation omitted). "Undefined terms are given their plain, ordinary, and popular meaning." Id.
9 | (citation and quotation omitted). But "where the policy language is clear and unambiguous, this
10 | court will not modify the contract or create ambiguity where none exists." Id.

11 | **B.    The Frei Demand is a Claim**

12 | Smartsheet argues that the claims in the Frei Demand cannot be construed as a "claim"
13 | under the Policies because it only attacked personal acts Frei took in the underlying divorce
14 | settlement. This argument lacks merit. As the underlying demand makes clear, Colacurcio
15 | accused Frei of breaching his fiduciary duties to her as a director of Smartsheet in hiding the
16 | details of the Tender Offer. (See Frei Demand at ¶¶ 44-49); Parrino, 146 F.3d at 705–06
17 | (allowing the Court to consider documents cited to in and on which the complaint relies). While
18 | Colacurcio included other claims against Frei in his personal capacity, they were not to the
19 | exclusion of his acts as a director. Under the Policy, the Frei Demand constitutes a "claim." (See
20 | FAC ¶ 78.)

21 | Smartsheet argues that the Court should allow discovery on this issue before deciding it
22 | or to at least construe the claims in the First Amended Complaint in its favor. While the Court
23 | construes the claims in Smartsheet's favor, the Court also considers the actual contents of the
24 | Frei Demand given that the complaint refers expressly to it. See Parrino, 146 F.3d at 705–06. As

ORDER DENYING MOTIONS TO DISMISS - 7

1  explained above, the Frei Demand undermines Smartsheet's position as it clearly asserts claims

2  against Frei as a director of Smartsheet. Smartsheet fails to advance any basis for the Court to

3  second-guess these allegations, which appear to be non-frivolous and facially valid. The Court

4  therefore rejects these arguments and finds that the Frei demand is a claim under the Policy.

5  **C.    The Claims are Unrelated**

6  The Court finds that the Frei Demand and the Colacurcio Class Action are unrelated and

7  distinct claims under the Policies.

8  Under the Federal Policy, "[a]ll Related Claims [Claims for Wrongful Acts based upon,

9  arising from, or in consequence of the same or related facts, situations, transactions or events or

10 the same or related series of facts, situations, transactions or events] shall be deemed a single

11 Claim made in the Policy Period in which the earliest of such Related Claims" was first made.

12 (FAC ¶ 83.) Given this claims-made policy, coverage necessarily depends on the "claim," as

13 defined in the policy. See Safeco Title Ins. Co. v. Gannon, 54 Wn. App. 330, 334-35 (1989). In

14 interpreting claims-made provisions "Court looks not to whether there are differences between

15 the two claims at issue, but instead whether there is 'any common fact, circumstance, situation,

16 transaction, event or decision' that 'logically or casually connect[s]' the acts." Navigators

17 Specialty Ins. Co. v. Double Down Interactive, LLC, No. 2:18-CV-01514-BJR, 2019 WL

18 3387458, at *3 (W.D. Wash. July 26, 2019) (quoting Carolina v. Cas. Ins. Co. v. Omeros Corp.,

19 No. C12-287RAJ, 2013 WL 5530588, at *3 (W.D. Wash. Mar. 11, 2013)).

20 The Colacurcio Class Action and Frei Demand share only limited overlap and several key

21 distinctions. It is true that both concern alleged misrepresentations and omissions relating to the

22 Tender Offer and the IPO. But the alleged misrepresentations and omissions are distinct. The

23 Frei Demand focuses on Frei's misrepresentations and omissions to Megan Colacurcio about the

24

fact that she could have sold her shares in the Tender Offer. Those misrepresentations were made only to Colacurcio and allegedly deprived her of her ability to sell her shares in the Tender Offer for a much higher price than she received in the divorce settlement. The Colacurcio Class Action, on the other hand, concerns Hinkle's and Insight's purported efforts to hide from investors the plans to take Smartsheet public <u>after</u> the Tender Offer. This caused the class members to sell shares too early in the Tender Offer and miss out on the higher stock price once the stock went public. As such, the injuries alleged are distinct as between the two actions. Moreover, the misrepresentations and omissions differ between the two actions and were made by two different individuals. And Smartsheet is also correct to point out that there is no evidence that Hinkle and Frei acted in concert or as part of any common scheme/business practice. The only logical connection is the fact that the claims involved the same security (Smartsheet stock) and the Tender Offer, and to some extent, the IPO. But the alleged misrepresentaitons and harms share little logical connection. The two actions attack to two distinct misrepresentations made by different directors with different motives. There is therefore insufficient overlap to make the claims related.

The Frei Demand does include allegations that Frei omitted material information about the plans to take Smartsheet public. Those allegations share some similarity to those in the Colacurcio Class Action. But as the Court reads the arbitration demand, the allegations about the IPO are not central to Ms. Colacurcio's arbitration demand. Instead, the Frei Demand focuses on the fact that "Colacurcio never had the opportunity to participate in the tender offer" because Frei hid the price of Tender Offer and the fact that Colacurcio could have participated in it. (Beato Decl. Ex. A at ¶ 4.) The arbitration demand focuses on what Frei knew about the Tender Offer and did not disclose to Colacurcio as the primary harm. (Id. ¶ 25-27.) And the injury to

1 Colacurcio is distinct from the injury to the class, because she had no opportunity to sell in the
2 Tender Offer, while the class claims focus on the harm arising from having actually sold shares
3 in the Tender Offer. Even with this overlap in allegations as to the IPO, the Court finds that the
4 claims, misrepresentations/omissions, and harms alleged in the Frei Demand materially differ
5 from those in the Colacurcio Class Action.

6       The facts here are similar to those the Ninth Circuit found to constitute two unrelated
7 claims under a claims-made policy. See Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty Lines
8 Ins. Co., 506 F.3d 922, 926 (9th Cir. 2007). In Fin. Mgmt., the Court considered claims brought
9 by two different investors against the same investment advisor who invested in the same
10 securities. Id. The investors claimed they were misled about the risks of the investments, but the
11 Court noted that the specific misrepresentations differed and that one set of claims primarily
12 invoked omitted information. Id. The Court held that these were separate claims under similar
13 policy language, distinguishing them from other cases where a single individual's acts caused the
14 same injury to two different people. Id. at 926. The logic of this case applies here with yet more
15 force in favor of Smartsheet. The misrepresentations and omissions here were made by two
16 different directors to two different sets of investors who suffered different sets of injuries at two
17 different points in time. While they concern the same underlying security, the wrongs sought to
18 be rectified are distinct.

19       The facts at issue here are also dissimilar to those found to constitute the same claim in a
20 case on which Federal relies. See Double Down, No. 2:18-CV-01514-BJR, 2019 WL 3387458,
21 at *3. In Double Down, the claims at issue were logically connected because they attacked the
22 same business practices and the complaints contained identical wording and "allege[d] violations
23 of similar state gambling statutes" and "similar consumer protection statutes." Id. The same
24

cannot be said to apply to the actions at issue in the matter before this Court. The facts in the Frei Demand and the Colacurcio Class Action are also distinct from those found related in another case cited by Federal: Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y., 374 F. App'x. 906, 907-08 (11th Cir. 2010). In Vozzcom, Inc., the court found that three claims were related when the plaintiffs were all cable installers who worked for Vozzcom during the same approximate time period, the complaints arose under similar facts, and the complaints all alleged Fair Labor Standards Act violations. Id. at 908. The court held that all of these factors made the three claims "at the very least" interrelated. Id. at 907. Here, the Frei Action and Colacurcio Class Action focus on the different harms, involve different time periods, and attack distinct fraudulent acts.

Having considered the Parties' arguments and the underlying allegationst, the Court DENIES the Motions to Dismiss.

## CONCLUSION

Although the Court finds the Frei Demand to be a "claim" under the Policy, it finds that it is a distinct claim from the Colacurcio Class Action and Ancillary Actions. As such, neither Federal nor Freedom is entitled to dismissal of the claims they put at issue in their motions, and the Court DENIES the Motions.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 8, 2022.

Marsha J. Pechman
United States Senior District Judge